UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE BURTON W. WIAND, as Receiver for
VALHALLA INVESTMENT PARTNERS,
L.P.; VIKING FUND, LLC; VIKING IRA
FUND, LLC; VICTORY FUND, LTD.;
VICTORY IRA FUND, LTD., and SCOOP
REAL ESTATE, L.P.

Case No.: 8:10-CV-71-T-17MAP, *et al* [1]

_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION IN TOTO

This CAUSE is before this Court on the Omnibus Report and Recommendation ("R&R")
entered by Magistrate Judge Mark A. Pizzo on June 8, 2011. (Doc. 41 in 10-cv-71). Judge
Pizzo recommends that this Court grant the Defendants' motions to compel arbitration, direct the
parties to proceed to arbitration in accordance with their respective arguments, stay each action,
and direct the Clerk to terminate any pending motions and administratively close these cases.

Pursuant to Rule 6.03, Rules of the Unites States District Court for the Middle District of
Florida, the parties had fourteen (14) days after service to file written objections to the proposed
findings and recommendations, or be barred from attacking the factual findings on appeal.
*Nettles v. Wainwright*, 677 F.2d 404 (5th Cir.1982) (en banc). Timely objections have been filed
by both the Receiver and the Defendants.

The objections filed by the Defendants are as follows. Defendant WORLD
OPPORTUNITY FUND, L.P. ("WOP") and Defendants represented by Bush Ross, P.A. ("Bush
Ross Defendants") have filed objections (Docs. 41 in 10-cv-203, 43 in 10-cv-71) to the factual
background set forth in the R&R and argue that the arbitrator should be the ultimate finder of
facts.[2] The Receiver has filed a response (Doc. 45 in 10-cv-71). In addition, both WOP (Doc.
44 in 10-cv-203) and the Bush Ross Defendants (Doc. 46 in 10-cv-71) have filed responses to
the arguments raised by the Receiver in the Receiver's objection to the R&R (Doc. 44 in 10-cv-

---

[1] The cases included by this Order are listed in Appendix A. Appendix A identifies the applicable case
number, Defendant, and the document number for each motion to compel.

[2] The case numbers for Defendants represented by Bush Ross are as follows: 10-cv-71; 10-cv-96; 10-cv-97;
10-cv-119; 10-cv-123; 10-cv-125; 10-cv-134; 10-cv-136; 10-cv-171; 10-cv-180; 10-cv-184. Case number 10-cv-
136 was administratively closed though endorsed order following a voluntary petition for relief under chapter 7 of
the United States Bankruptcy Code.

71). After consideration of the R&R, all motions and responses, and for the reasons set forth below, this Court will adopt Judge Pizzo's R&R *in toto*.

## I.    Standard of Review

When a party makes a timely and specific objection to a finding of fact in a report and recommendation, the district court should make a *de novo* review of the record with respect to the factual issues. 28 U.S.C. §636(b)(1); *U.S. v. Raddatz*, 447 U.S. 667 (1980); *Jeffrey S. v. State Board of Education of State of Georgia*, 896 F.2d 507 (11th Cir.1990). The standard of review applied by a district court upon review of a Magistrate Judge's report and recommendation is set forth in the United States Code as follows:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. §636(b)(1). This Court will now review the Receiver's objections to Judge Pizzo's R&R and the Defendants' limited objections *de novo*.

## II.    Background

The cases presently before this Court emanate from a Securities and Exchange Commission enforcement action dealing with a Ponzi scheme perpetrated by a hedge fund manager, Arthur Nadel ("Nadel")[3]. Nadel plead guilty on February 24, 2010, to a criminal indictment charging him with using purported hedge funds, and the now receivership entities, Valhalla Investment Partners, L.P. ("Valhalla"); Viking Fund, LLC ("Viking"); Viking IRA Fund, LLC ("Viking IRA"); and Scoop Real Estate, L.P. ("Scoop") (collectively, the "Hedge

---

[3] *See SEC v. Arthur Nadel, et al.*, Case No. 8:09-CV-87-T-26TBM.

Funds"), and their purported managers, Valhalla Management, Inc. ("Valhalla Fund Manager");
Viking Management, LLC ("Viking Fund Manager"); and Scoop Management, Inc. and Scoop
Capital, LLC (collectively "Scoop Fund Managers," and collectively with Valhalla Fund
Manager and Viking Fund Manager, the "Fund Managers"), to perpetrate a massive and
continuous Ponzi scheme from some time in1999 until January of 2009. The indictment charged
Nadel with six (6) counts of securities fraud, one (1) count of mail fraud, and eight (8) counts of
wire fraud for perpetrating a Ponzi scheme using the same Hedge Funds that underlie the cases
currently before this Court.

The appointed receiver, Burton W. Wiand ("Receiver"), has been charged with rounding
up assets and the Receiver has sued over one hundred and fifty (150) investors demanding a
return of "false profits." Such suits are commonly referred to as "clawback cases." Twenty
three (23) of these investors now point to arbitration provisions and move this Court to compel
arbitration pursuant to the Federal Arbitration Act ("FAA"). The issue presently before this
Court, and addressed by Judge Pizzo in his R&R is straightforward: in which forum should these
actions be heard? Judge Pizzo recommends to this Court that an arbitral forum is appropriate
and that this Court should grant the Defendants' motions to compel arbitration.

Judge Pizzo's R&R sets forth a factual background to provide these cases with the
necessary context. In light of such, WOP and the Bush Ross Defendants have filed limited
objections to the R&R, maintaining that any factual findings that relate to the merits of the
Receiver's claims should be left for an arbitrator.[4] The objection by the Bush Ross Defendants
(Doc. 43 in10-cv-71) adopts the arguments made to the R&R filed by WOP in *Wiand v. World
Opportunity Fund, L.P.*, Case No. 8:10-CV-203-EAK-MAP (M.D. Fla. (Doc. 41)); specifically,
that the R&R could be construed as finding true established facts, which only thus far have been
alleged by the Receiver. The Defendants' limited objections are well taken.

*Adams v. Dyer*, 223 F.App'x 757, 763 (10th Cir.2007), notes the possibility of waiver for
failure to object to the "magistrate judge's unfavorable recitation of the 'undisputed facts,'" and
*Hunish v. Assisted Living Concepts, Inc.* 2010 WL 1838427, at *8 (D.N.J. May 6, 2010), notes
that "…if the arbitrator were ultimately bound by the findings of this Court, then Plaintiffs would
successfully have thwarted the arbitration requirement." The factual background set forth in the

---

[4] This Court notes that while not all the Defendants listed in Appendix A raise such a limited factual
objection to the R&R, this Court's conclusion regarding this objection applies to all Defendants listed in Appendix
A as established by the relevant case law.

R&R was required for contextual purposes, of which Judge Pizzo was undoubtedly well aware. Judge Pizzo's intention was not to make factual findings as to the merits of the Receiver's claims, but, instead, merely to recite the allegations as he perceived them. These cases will be sent to an arbitrator for resolution and the facts will ultimately be established during arbitration.

This Court has found no inconsistencies with Judge Pizzo's factual background as set forth in the R&R and the background information contained within the record. As such, this Court adopts Judge Pizzo's "*Background*" section for contextual purposes only and in order to properly discuss the Receiver's objections and Defendants' responses thereto. What are found to be facts, as compared to mere allegations, will be decided during arbitration. Judge Pizzo's "*Background*" section is set forth below[5]:

### A. Background

#### 1. the scheme

Arthur G. Nadel, from his base in Sarasota and under the umbrella of two investment management companies, Scoop Capital, LLC and Scoop Management, Inc., managed six hedge funds over a course of time: Valhalla Investment Partners, L.P., ("Valhalla Investment Fund"), Viking Fund, LLC ("Viking Fund"), Viking IRA Fund, LLC ("Victory IRA Fund"), Victory Fund, Ltd. ("Victory Fund"), Victory IRA Fund, Ltd. ("Victory IRA Fund"), and Scoop Real Estate, L.P. ("Scoop Real Estate Fund") (collectively referred to as the "Hedge Funds").[6] Unfortunately, Nadel kept the books and also kept his investors in the dark about the true state of their investments. All the Hedge Funds were undercapitalized and over hyped. Instead of a reported value of hundreds of millions, their worth was more like $500,000. Instead of earning profits as their account

---

[5] The only alterations to Judge Pizzo's "Background" section are the reordering of footnote numbers to coincide with this Court's order and the addition of bracketed clarifying language at footnote number eleven (11).

[6] Wiand acts as receiver for these entities and brings these clawback actions on their behalf.

statements in 2008 and 2009 repeatedly stated, they lost money. Like every Ponzi schemer, Nadel robbed Peter to pay Paul.[7]

### 2. the enforcement action

In January 2009, the SEC brought an emergency enforcement action against Nadel, Scoop Capital, and Scoop Management (identified as "defendants" in that action) and the Hedge Funds (denominated as "relief defendants") contending the defendants had violated Section 17(a) of the Securities Act of 1933 (15 U.S.C. § 77e(a)), Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. 78j(b)), and Rule 10b-5 (17 C.F.R. § 240.10b-5).[8] *See SEC v. Arthur Nadel, et al.*, Case No. 8:09-cv-87-T-26TBM. Not only did the SEC seek declaratory and injunctive relief, an asset freeze, disgorgement, and civil money penalties, it also moved for the appointment of a receiver to manage and preserve all assets belonging to the defendants and the relief defendants. The district judge appointed Burton W. Wiand ("Wiand") as the receiver for the Hedge Funds and eventually entered a permanent injunction as to Nadel. *See id.* at docs. 8, 140, 460.

### 3. clawbacks and arbitration clauses

Since his appointment, Wiand has filed more than 150 clawback actions to recover "false profits" from Hedge Funds investors. All these cases rely on the same two theories, Florida's Uniform Fraudulent Transfer Act ("FUFTA," *see* Fla. Stat. § 726.101, *et seq.*) and an equitable disgorgement claim based on unjust enrichment. And all these cases strike

---

[7] Nadel plead guilty in the Southern District of New York to a multi-count indictment charging him with securities violations, mail fraud, and wire fraud; the court sentenced him to fourteen years. *See* The Receiver's Omnibus Opposition to Defendants' Motion to Compel Arbitration and Dismiss Complaint or, Alternatively, Stay Action ("Receiver's Opposition") at p. 8 and Declaration of Gianluca Morello in Support of Receiver's Omnibus Opposition to Defendants' Motion to Compel Arbitration and Dismiss Complaint or, Alternatively, Stay Action ("Morello Declaration") at Exhibit 2.

[8] A "relief defendant," also characterized as a "nominal defendant," has no ownership interest in the property that is the subject of the litigation but is nonetheless joined to aid in the recovery relief. *See SEC v. George*, 426 F.3d 786, 798 (6th Cir. 2005); *SEC v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991).

the same theme – an investor defendant received Hedge Funds disbursements in excess of his or her principal investment (hence, the claim of a "false profit").[9] These investors, Wiand says, are to be distinguished from the larger group of investors who suffered net losses, and to allow the winners to retain their false profits at the expense of the losers would be inequitable and unjust.

Out of these clawback cases, the Defendants in these twenty-three actions (*see* appendix A) move to compel arbitration per § 4 of the Federal Arbitration Act (FAA). 9 U.S.C. § 4.[10] All had subscription documents with their associated Hedge Funds as well as either a limited partnership agreement or a limited liability company agreement. More specifically, investors in both Viking Fund and Viking IRA Fund obtained subscription documents and a limited liability company agreement with nearly identical arbitration provisions; investors in Victory Fund obtained subscription documents and a limited partnership agreement, both containing different arbitration provisions; investors in Valhalla Investment Fund obtained subscription documents and a limited partnership agreement, the latter of which contained an arbitration provision; and investors in Scoop Real Estate Fund obtained subscription documents and a limited partnership agreement, the latter of which contained an arbitration provision.[11] In most respects, the arbitration provisions set forth the same general directive. Each directs that disputes or controversies that arise from the agreements be arbitrated in a particular forum (Chicago, New York City, or Sarasota) before a specific arbitral organization (American Arbitration

---

[9] Case No. 8:10-cv-203-T-17MAP is the only notable exception. In that case, Wiand seeks all money transferred to Defendant World Opportunity Fund, L.P., including the "false profits." Irrespective, the analysis is the same.

[10] That section provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court … for an order directing that such provision proceed in the manner provided for in such agreement."

[11] Appendix B to this Report [and this Court's Order] recites the various arbitration clauses pertaining to these clawback actions and annotates which clause governs which action.

Association or JAMS) or by a specific class of arbitrator (i.e., a retired judge applying JAMS rules).

## III.   Discussion

As established by Judge Pizzo, Congress enacted the FAA in 1925 "in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, __ U.S. __, 131 S.Ct. 1740, 1745 (2011). The mainstay of the FAA provides:

> "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

*Id.* quoting 9 U.S.C. §2. The Supreme Court has repeatedly described this directive as evoking a "national policy," or a "liberal federal policy," or a "strong" policy favoring arbitration agreements. *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) ("national policy"); *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983) ("liberal federal policy"); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985) ("strong" federal policy). To effectuate this Congressional command, the Supreme Court has repeatedly admonished the lower courts to "place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility*, 131 S.Ct. at 1745 (internal citation omitted).[12] Furthermore, "[t]he laudatory goals of the FAA will be achieved only to the extent that courts ensure arbitration is an alternative to litigation, not an additional layer in a protracted contest." *B.L. Harbert Intern., LCC v. Hercules Steel Co.*, 441 F.3d 905, 906 (11th Cir.2006).

When faced with a motion to compel arbitration, the court is to follow a two step process. The first inquiry of the two step process is: (1) did the parties agree to arbitrate the particular dispute at issue, and if so; (2) do legal constraints external to the parties' agreement foreclose arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985); *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir.2004). The court's analysis of these two inquires is with a distinct perspective, that is, "a healthy regard for the federal policy

---

[12] In *Southland, supra*, the court reiterated that the FAA was a Congressional exercise of its Commerce Clause power, which since *Gibbons v. Ogden*, 22 U.S. 1 (1824) has been held plenary. 465 U.S. at 11-12.

favoring arbitration" and the role of courts to "rigorously" enforce such agreements. *Klay*, 389 F.3d at 1200. As established by Judge Pizzo, the burden is on the Receiver to show that §2's escape-from-arbitration hatch applies, with exception to the Receiver's challenges to Valhalla and Scoop. 9 U.S.C. §2; *Green Tree Fin. Corp.-Ala. v. Randolph*, 531U.S. 79, 91-92 (2000) ("party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue" or that "arbitration would be prohibitively expensive"); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (burden on party opposing arbitration to show exception); Doc. 41 pp. 6-7.

Turning to the Receiver's objections to the R&R, the Receiver raises five (5) objections. Each of the Receiver's objections contains multiple sub arguments. This Court will address the five (5) main objections raised by the Receiver and expand upon the Receiver's sub arguments only if appropriate. The Receiver's five (5) main objections are as follows: (1) The R&R does not properly consider the inherent conflict between arbitration and the purpose of 28 U.S.C. §§754 and 1692; (2) The R&R does not properly consider that the fund managers lacked authority to bind the hedge funds; (3) The R&R improperly fails to conclude that only some of the receiver's claims would be arbitrable; (4) The R&R incorrectly concludes claims relating to transfers from Valhalla are arbitrable; and (5) The R&R incorrectly concludes claims relating to transfers from Scoop are arbitrable. Having reviewed the Receiver's objections to Judge Pizzo's R&R, this Court does not find the Receiver's arguments to be of such a compelling nature as to displace the conclusions reached by Judge Pizzo. However, this Court will address the Receiver's objections and will reiterate some of the well reasoned, and legally sound, conclusions reached by Judge Pizzo.

Case No.: 8:10-CV-71-T-17MAP

**a. Alleged Conflict Between Arbitration and Purpose of 28 U.S.C. §§754 and 1692**

Title 28 U.S.C. §754 states as follows:

> A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with *complete* jurisdiction and control of all such property with the right to take possession thereof.
> He shall have capacity to sue in any district without ancillary appointment, and may be sued with respect thereto as provided in section 959 of this title.
> Such receiver shall, within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located. The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district.

28 U.S.C. §754 (emphasis added). Title 28 U.S.C. §1692 states as follows:

> In proceedings in a district court where a receiver is appointed for property, real, personal, or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district, but orders affecting the property shall be entered of record in each of such districts.

28 U.S.C. §1692. The Receiver argues that, taken together, §§754 and 1692 display Congress' intent to provide district courts, through the receiver, exclusive control. While the Receiver argues that such jurisdiction and control is exclusive, the text of §754 describes the court's jurisdiction and control as complete, not exclusive. Section 754 gives a receiver complete jurisdiction over property located within the jurisdiction in which the receiver has been appointed, and if applicable, triggers §1692. As Judge Pizzo's R&R correctly stated, when §754 applies, §1692 expands the territorial jurisdiction of the court which appoints a receiver to any district within the United States where property believed to be that of the receivership is found, provided the receiver complies with §754. 28 U.S.C. §§ 754, 1692; *see generally*, Phillip S. Stenger, Receivership Sourcebook (4th Ed, 2009) at pp. 12-13; Doc. 41 p.19.

The Receiver argues *Link v. Powell*, 57 F.2d 591, 594 (W.D.S.C. 1932) as an authority for this Court's exclusive power over the instant matter, specifically that, "No law is more firmly settled than the court having jurisdiction, both of the receivers and of the subject matter, has exclusive power to administer the entire estate and property." Furthermore, the Receiver argues that arbitration inherently conflicts with the purpose of §§754 and 1692, which ultimately divests

9

this Court's jurisdiction and control in favor of arbitration. The Receiver's objection is one of Congressional intent and the issue of Congressional intent may be properly determined under the analysis provided in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987).

The *McMahon* court sets forth three (3) factors for deducing Congressional intent. These factors are: (1) the text of the statue; (2) its legislative history; and (3) whether "an inherent conflict between arbitration and the statute's underlying purposes" exists. *McMahon* at 227. The burden is placed upon the party opposing arbitration to show Congress intended to preclude arbitration of the statutory claim. *Id.; Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1273 (11th Cir.2002) (applying test). The burden in the instant case is upon the Receiver as it opposes arbitration, and as the *Davis* court observed, the burden is daunting. "In every statutory right case the Supreme Court has considered, it has upheld binding arbitration if the statute creating the right did not *explicitly* preclude arbitration." *Davis* 305 F.3d at 1273 (emphasis original). While the Receiver argues the R&R's reliance on *Davis* does not portray the full picture of circumstances, this Court finds such an argument unconvincing. Under *McMahon's* third prong, a court must determine whether an inherent conflict exists between arbitration and the underlying purposes of receivership, as nothing in the statute's text or legislative history speaks to arbitration. Judge Pizzo's review of the principles governing a receiver, in addition to Judge Pizzo's review of principles governing the receivership court, establishes the third prong of *McMahon* has not been satisfied. Judge Pizzo's detailed review states as follows[13]:

> A receiver, like Wiand, is a creature of equity. *Gulf Ref. Co. of La. v. Vincent Oil Co.*, 185 F. 87 (5th Cir. 1911).[14] Appointed by the court and considered an officer of the court, the receiver's task is to take control and custody of the subject property and manage it within 28 U.S.C. § 959(b)'s broad confines, namely: "in the same manner that [its] owner or possessor thereof would be bound to do if in possession thereof." Nonetheless, the receiver's authority is tied to the court's equitable perceptions. As one commentator observes, "the case law surrounding receiverships clearly

---

[13] The only alterations to Judge Pizzo's review are footnote numbering and complete case citations where required.

[14] The concept traces back to Elizabethan times when a chancery court appointed a receiver to protect property interests from being wasted by the party in possession. See WRIGHT, MILLER, & MARCUS, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2981.

and repeatedly demonstrates that the receiver's powers in operating the estate are extraordinary and virtually only limited by the district judge's concept of equity." RECEIVERSHIP SOURCEBOOK, *supra*, at p. 7.

At the SEC's specific request, the district judge in the enforcement action appointed Wiand as receiver per the "well-established equitable remedy" available to the SEC in such actions. *SEC v. First Fin. Group of Texas*, 645 F.2d 429, 438 (5th Cir. Unit A 1981). The district judge empowered Wiand to take immediate possession of the assets and property of "every kind" of Scoop Capital LLC, Scoop Management, and the relief defendants whom Wiand represents in these clawback actions. He also directed Wiand to conduct and institute such actions and legal proceedings against others "for the benefit and on behalf of [Nadel, Scoop Capital LLC, and Scoop Management, Inc.] and [the] Relief Defendants and their investors and other creditors as [Wiand] deems necessary."[15] These clawback cases emanate from that broad directive.

But the receivership is "never an end in itself"; it "is only a means to reach some legitimate end sought through the exercise of the power of the court of equity." *Tucker v. Baker*, 214 F.2d 627, 631 (5th Cir. 1954) quoting *Gordon v. Washington*, 295 U.S. 30, 37 (1935). Because Wiand's receivership is ancillary to the enforcement action, that proceeding's goal is the key: "the primary job of the district court [in supervising an equitable receivership] is to ensure the proposed plan of distribution is fair and reasonable." *SEC v. Wealth Mgmt. LLC*, 628 F.3d 323, 332 (7th Cir. 2010). And to that end, the Court's oversight obligation is to "watch[] [the receivership] with jealous eyes lest [his] function be perverted." *Tucker*, 214 F.2d at 631.

Wiand's argument that an arbitral forum is unsuitable for litigating the merits of a clawback case rests on the notion that a securities enforcement

---

[15] *See SEC v. Arthur Nadel, et al.*, Case No. 8:09-cv-87-T-26TBM at doc. 8.

action is the difference-maker here. Namely, the SEC's goals in enforcing the provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934, Wiand's role in that enforcement action, and the Court's role in supervising Wiand and overseeing the receivership estate all make arbitration inappropriate. But as already noted, the Supreme Court has rejected this argument by holding that actions for violations under these Acts can be arbitrated. *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484-86 (1989) (Securities Act of 1933); and *McMahon, supra*. These cases adhere to the liberal federal policy favoring arbitration agreements by dictating the applicable principle: "claims arising under a statute designed to further important social policies may be arbitrated because 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum,' the statute serves its function." *Green Tree, supra*, 531 U.S. at 90 quoting *Gilmer*, 500 U.S. at 28. From that perspective, an arbitral forum clearly gives Wiand the ability to vindicate his mandate. And in the end, Wiand must still answer to the district judge in the enforcement action, who will ensure that the proposed plan of distribution is fair, reasonable, and in keeping with the enforcement action's goals. *Wealth Mgmt. LLC, supra*.

Doc. 41 pp. 21-23. While the Receiver argues that Judge Pizzo failed to consider an inherent conflict between §§754 and 1692, such an alleged "contrary congressional command" was examined under *McMahon* by Judge Pizzo in his R&R. Furthermore, §754 was enacted in 1948, but was a re-codification of an amended version of 28 U.S.C. §117, which was enacted in 1911. *See* 28 U.S.C. §754, Editor's and Revisor's Notes. Congress enacted the FAA in 1925. Had Congress chosen to exempt receivers from arbitration, Congress could have does so in 1948. Neither the statutory text or the legislative history support the Receiver's argument that there is an inherent conflict between arbitration and the purpose of 28 U.S.C. §§754 and 1692. Furthermore, in the wake of *Mitsubishi*, the Supreme Court has consistently upheld arbitration of claims grounded on federal statutory rights. *See, e.g., Green Tree Fin. Corp.-Ala v. Randolph*, 531 U.S. 79, 88-92 (2000) (Truth in Lending Act); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) (Age Discrimination and Employment Act); *Rodriguez de Quijas*, 490 U.S.

477, 484-86 (1989) (Securities Act of 1933); *McMahon*, 482 U.S. at 238, 242 (Securities Exchange Act of 1934, Racketeer Influenced and Corrupt Organization Act). The Receiver's argument that examination of federal receivership laws would reach an alternative conclusion is not well taken by this Court.

The Receiver also argues that arbitration inherently conflicts with bankruptcy laws. The Receiver, having previously conceded to standing in the shoes of the receivership entities and not the creditors, is bound by the arbitration clause. *See Kittay v. Landegger (In re Hagerstown Fiber LP)*, 277 B.R. 181, 199 (Bankr. S.D.N.Y. 2002) ("[w]here the trustee sues a successor to the debtor, he is bound by the arbitration clause in the debtor's pre-petition contract."); *Gertz v. Echo Rock Ventures, LLC (In re Arter & Hadden LLP)*, 339 B.R. 445, 450 (Bankr. N.D. Ohio 2006) ("In all cases where the trustee seeks to assert or enforce the debtor's right of action against another, he standing in the debtor's shoes regarding defense to the action."). This Court finds no inherent conflict with §§754 and 1692.

### b. Alleged Lack of Authority of Fund Managers to Bind Hedge Funds

The Receiver alleges that the R&R did not properly consider that the Fund Managers lacked the authority to bind the Hedge Funds. This argument focuses on the existence of the contract, a purported challenge premised on an argument that no contract was ever concluded, as compared to the validity of the contract, a purported challenge premised on an argument that a contract was concluded, but that it is invalid and thus unenforceable. The Receiver maintains that the R&R improperly fails to meaningfully recognize the challenge of contract existence, and instead focused on contract validity. This Court does not agree.

Judge Pizzo's R&R contained detailed substantiation of both validity and existence challenges to an arbitration agreement. While the Receiver argues that there was a lack of authority in signing the arbitration contracts, such an argument is without merit. The plain language of the FAA requires the arbitration provision to be "written"; it does not require the agreement to be signed by either party. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368-69 (11th Cir.2005).

Judge Pizzo set forth the two types of validity challenges grounded on §2's savings clause recognized by the Supreme Court in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S.

440, 444 (2006). Namely, that the first attacks "the validity of the agreement to arbitrate" (citing as an example, *Southland, supra*, which dealt with a challenge of the agreement to arbitrate as void under California law as it purported to cover claims under the state Franchise Investment Law) and the second challenges the "contract as a whole, either on a ground that directly affects the entire agreement or on the ground that the illegality of one of the contract's provision render the whole contract invalid." *Id.* In dealing with these two validity challenges, the court culled three "propositions" from its prior FAA cases: (1) an arbitration clause, as a matter of substantive federal arbitration law, is severable from the remainder of the contract; (2) unless the challenge is to the arbitration clause itself, the issue of the contract's validity is to be considered by the arbitrator; and (3) this arbitration law applies in state and federal courts. *Id.* at 445-46. This Court agrees with Judge Pizzo that the *Buckeye's* propositions lead to an assumption that when a party presents a presumptively valid contract with an arbitration clause, the district court in most instances sends the dispute to arbitration. *See e.g., Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir.1992) ("Under normal circumstances, an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the first court to send any controversies to arbitration.").

While correctly established by Judge Pizzo that the Defendants have the burden of proof, the Receiver distorts this burden. While the Receiver argues that the Defendants cannot show that a binding arbitration agreement exists, such an argument fails as it is applied too broadly. The Defendants face a *prima facie* burden of production for establishing *the existence* of a presumptively valid arbitration agreement. *Chastain*, 957 F.2d at 854. ("[u]nder such circumstances, the parties have at least presumptively agreed to arbitrate any disputes, including those disputes about the validity of the contract *in general*.") (emphasis original). Judge Pizzo specifically addressed a potential "existence" argument by the Receiver and stated that, "[T]o the extent Wiand contends that a particular Defendant cannot prove the *existence* of an agreement, Wiand fails to offer the requisite factual affidavits countering the presumptive record." Doc. 41 p. 11 (emphasis original). As *Chastain* further clarifies, "A party cannot place the making of an arbitration agreement in issue simply by opining that no agreement exists. Rather, that party must substantiate the denial of the contract with enough evidence to make the denial colorable." *Id.* at 855. Judge Pizzo's R&R continues to further dispel the Receiver's "existence" argument. Doc. 41 pp. 12-13.

The Receiver sites *Chastain* as illustrative that there is no duty for a district court to compel arbitration pursuant to the FAA when a party challenges the existence of any agreement. *Chastain* is factually distinct from the case *sub judice* as *Chastain* involved allegations of forged signatures and an admission that the plaintiff did not personally sign the agreement containing the arbitration clause. *Id.* at 853-54. Such allegations are not made in the present case. The Eleventh Circuit recognized the uniqueness of the allegations in *Chastain*. "Under normal circumstances, an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration." *Id.* at 854. Included among the arisen disputes are those disputes about the validity of the contract in general. *Id.* (emphasis omitted). The R&R thoroughly addressed the Receiver's existence as opposed to validity argument and properly concluded these cases are arbitrable.

The Receiver's additional argument that the contract fails as a matter of law is not of first impression and courts have been consistent in rejecting such an argument. Particularly, the Eleventh Circuit has twice rejected the argument that a contract is "void *ab inito*" due to its illegality. *See Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 881 (11th Cir.2005) (rejecting that "void *ab initio* allegation[s]" are like "the contentions in *Chastain* that a contract ever existed."); *Bess v. Check Express*, 294 F.3d 1298 (11th Cir.2002) (noting that *Chastain* involved the allegation that a contract never existed at all because the plaintiff never signed and assented to the contracts in question.). Furthermore, "attacks on the validity of an entire contract, as distinct from attacks aimed at the arbitration clause, are within the arbitrator's ken." *Preston v. Ferrer*, 552 U.S. 346, 353, 128 S.Ct. 978, 984 (2008). As the Receiver's challenges go to the legal formation of the agreements, they are for the arbitrators to consider. *Id.* at 354 (*Buckeye* "resolves the dispute before us" as *Ferrer* sought "invalidation of the contract as a whole" and "made no discreet challenge to the validity of the arbitration clause"); *Jenkins*, 400 F.3d at 880-82 (per *Prima Paint*, issues as to whether payday loan contracts were illegal and void *ab initio* under Georgia law were for arbitrator, not court, to decide); *Bess*, *supra*, 294 F.3d 1306 (rejecting void *ab initio* argument as fitting with *Chastain's* model*); see also: Morgan v. Svete*, 366 Fed. App'x 624, 632 (6th Cir.2010) (rejecting receiver's argument that signor to contract acted *ultra vires* because actions breached fiduciary duty owed to corporation; per *Buckeye* and *Prima Paint* receiver's challenge is to validity rather than existence