IN RE BURTON W. WIAND, as Receiver for
VALHALLA INVESTMENT PARTNERS,
L.P.; VIKING FUND, LLC; VIKING IRA    Case No. 8:10-cv-71-T-17MAP, *et al.*[1]
FUND, LLC; VICTORY FUND, LTD.;
VICTORY IRA FUND, LTD., AND
SCOOP REAL ESTATE, L.P.,
_____/

## OMNIBUS REPORT AND RECOMMENDATION

These cases emanate from a Securities and Exchange Commission enforcement action aimed at dealing with the aftermath of a massive Ponzi scheme perpetrated by a hedge fund manager.[2] Burton W. Wiand ("Wiand"), the receiver appointed in that action and charged with rounding up assets, has sued more than 150 investors demanding the return of some or all of their "false profits," the principal invested, commissions or fees received, or charitable contributions received.[3] A subset of investors moved to compel arbitrations per the Federal Arbitration Act ("FAA") (*i.e.,* 9 U.S.C. § 4), and on September 29, 2011, the Court granted their motions, stayed their proceedings pending the arbitrations, and administratively closed each case.[4] Wiand now seeks this Court's certification

---

[1] The specific cases covered by this omnibus report and recommendation are listed in Appendix A which is part of this report.

[2] *See S.E.C. v. Arthur Nadel, et al.,* Case No. 8:09-cv-87-T-26TBM.

[3] These type of actions are commonly known as "clawback cases."

[4] At the time the Court entered its September 29 order, the Defendants in cases 8:10-cv-206-T-17MAP and 8:10-cv-221-T-17MAP had not yet appeared. Subsequently, the Defendants have appeared in those actions and moved to compel arbitration. In addition, the Defendant in 8:10-cv-112-T-17MAP recently moved to compel arbitration as well. On November 18, 2011, the district judge granted the motions to compel arbitration in those three cases leading Wiand to file the motions for certification in each case. Notwithstanding the date of those three orders, for purposes of this report and recommendation, the order compelling arbitration will be referred to as the

for interlocutory appeals in twenty-four of these cases (see Appendix A) per 28 U.S.C. § 1292(b) (doc. 50).[5] In sum, he contends the Court's rejection of his argument that 28 U.S.C. §§ 754 and 1692 trump the FAA presents an issue where substantial grounds for differences of opinion exist. The Defendants uniformly oppose the motion.[6] For the reasons stated below, I recommend the district judge deny certification.[7]

*A. The September 29 order – final or interlocutory*

In *Green Tree Fin. Corp.-Ala. v. Randolph*, the Supreme Court held that a district court's order compelling arbitration and dismissing a party's underlying claim is a final decision with respect to arbitration within the meaning of 9 U.S.C. § 16(a)(3), a provision that preserves immediate appeal of any "final decision with respect to arbitration." 531 U.S. 79, 86 (2000). The Court defined a "final decision" as one that "ends the litigation on the merits and leaves nothing more for the court to do but to execute the judgment." *Id.* Seizing on this language, Wiand put the September 29 order in that box and filed notices of appeals for these cases. *See* doc. 50 at p. 3.

Afterward, Wiand apparently reconsidered his determination as to the "finality"of the September 29 order. Thinking that some might consider the order an interlocutory one, he filed the instant omnibus motion per 28 U.S.C. § 1292(b) seeking certification for immediate appeals. As

---

September 29 order.

[5] All document references here, unless otherwise noted, are to case number 8:10-cv-71-T-17MAP.

[6] The attorneys representing the Defendants in these twenty-four cases have adopted defense counsel's arguments made in the captioned case (*i.e.*, 8:10-cv-71-T-17MAP at doc. 55).

[7] The district judge referred these matters to me for a report and recommendation. *See* 28 U.S.C. § 636(b); Local Rule 6.01(b).

2

Wiand recognizes, the filing of a notice of appeal is an event of jurisdictional significance in that it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects involved in the appeal. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). But an exception to this rule is if the matter at issue serves to aid the appeal. If so, then the district court retains authority to act. *Showtime/The Movie Channel, Inc. v. Covered Bridge Condo. Ass'n*, 895 F.2d 711, 713 (11th Cir. 1990). Wiand contends this motion fits that exception. Notably, none of the Defendants oppose the Court's consideration of the motion, although each contends the motion should be denied on the merits.

Admittedly, fixing a label on whether an order is final or interlocutory can, at times, be vexing. Hence, Wiand's attempt to cover his bets is perhaps understandable, particularly when considering the deadline he faced for filing a notice of appeal. But his reliance on the aid-in-appeal exception, at least as applied by the Eleventh Circuit in *Showtime*, is misplaced. This exception presupposes a *valid* appeal. *United States v. Hitchmon*, 602 F.2d 689, 694 (5th Cir. 1979) (*en banc*); *see also* 20 MOORE'S FEDERAL PRACTICE § 303.32 (MATTHEW BENDER 3D ED.).[8] If the Court's September 29 order is interlocutory, Wiand's notice of appeal is a nullity and certification is an indispensable first step for his appeal of the order. 28 U.S.C. §1292(b); 16 WRIGHT, MILLER & COOPER 2D § 3929 (identifying certification as indispensable first step). If, however, the September 29 order is final, the notice of appeal divested this Court of jurisdiction and rendered certification unnecessary. It follows that ruling on his motion cannot possibly aid his appeal as he perfected the appeal when he filed his notice.

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions the former Fifth Circuit rendered prior to October 1, 1981.

Because the Court stayed the proceedings, compelled arbitration, and administratively closed the case, my view is that the September 29 order is interlocutory. That conclusion squarely matches the Supreme Court's observation in *Green Tree Financial,* 531 U.S. at 87 n.2 ("Had the District Court entered *a stay* instead of a dismissal in this case, that order would not be appealable [per 9 U.S.C. § 16(b)(1)]") (emphasis added). And it matches the Eleventh Circuit's finding in *Campbell v. Dominick & Dominick, Inc.*, 872 F.2d 358, 360 (11th Cir. 1989) (order staying proceedings, compelling arbitration, and closing the case for statistical purposes was not a final order). Hence, the notice of appeal is a nullity. And its filing, therefore, does not deprive this Court of its jurisdiction to consider Wiand's motion for certification under 28 U.S.C. § 1292(b). *Hitchmon*, 602 F.2d at 694.[9]

### B. 28 U.S.C. § 1292(b)

Section 1292(b) says the following:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order....

The statute puts forth three specific demands. *McFarlin v. Conseco Servs. LLC*, 381 F.3d 1251, 1255-1259 (11th Cir. 2004). The certified issue presents a controlling question of law – one that is

---

[9] In his supplemental notice of authority (doc. 54), Wiand abandoned the plan he had earlier expressed in his motion for certification, namely: he would ask the Eleventh Circuit to relinquish temporarily its jurisdiction so as to permit the district court to hear his motion for certification, which was his intent as expressed in his motion for certification. To support his new position he cited *Hoffenberg v. United States*, No. 00 Civ. 1686 (RWS), 2004 WL 2338144, *4 (S.D.N.Y. Oct. 18, 2004). To the extent that case is persuasive, it stands for the proposition I have stated here – a district court retains jurisdiction where a litigant prematurely files a notice of appeal of a non-final order. *Hitchmon, supra.*

"pure" and allows the court of appeals to rule "without having to delve beyond the surface of the record in order to determine the facts." *Id.* at 1259. In the main, it should have enough legal heft to "lift the question out of the details … of a particular case and give it general relevance to other cases in the same area." *Id.* Next, substantial grounds for differing opinions must exist. If the district court applied settled law to the case's facts, an interlocutory appeal is plainly inappropriate. *Id.* at 1258. Instead, courts should be divided on the question, or it should be particularly difficult, even one of first impression. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) ("fair-minded jurists might reach contradictory conclusions"); *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990) (difficult or first impression). Lastly, an appellate answer to the question should materially advance the ultimate termination of the litigation either by avoiding a trial or substantially shortening the litigation. *McFarlin*, 381 F.3d at 1259.

As to these requirements, Wiand bears the burden. And, even assuming he were to satisfy all three demands, the motion is committed "wholly" to the discretion of the district court and the court of appeals. *OFS Fitel, LLC v. Epstein, Becker and Green, P.C.,* 549 F.3d 1344, 1358-1359 (11th Cir. 2008) (the statute sets a "high threshold"); *McFarlin*, 381 F.3d at 1259, 1264 (even if all three factors present, court can reject appeal; petitioning party bears burden). The circuit cautions prudence when examining such motions, as "the proper division of labor between the district courts and the court of appeals and the efficiency of judicial resolution of cases are protected by the final judgment rule, and are threatened by too expansive use of the § 1292(b) exception to it." *McFarlin*, 381 F.3d at 1259. Therefore, interlocutory review should be the "rare exception," and most interlocutory orders will not meet the test. *McFarlin*, at 1264 ("rare exception); *OFS Fitel, LLC*, 549

F.3d at 1359.[10]

C. *The Question*

Wiand says his "appeal will primarily focus on the inherent conflict between arbitration, on the one hand, and the purpose of 28 U.S.C. §§ 754 and 1692, on the other. *See* doc. 50 at p. 5. *McFarlin* admonishes a district court "should specify the controlling question it had in mind" in its certification order. 381 F.3d at 1264. Accordingly, Wiand's statement suggests this question: Are the policy considerations surrounding a federal receivership in an enforcement action inconsistent with arbitration? Or, put another way: Do 28 U.S.C. §§ 754 and 1692 trump the FAA? The September 29 order answered these questions in the negative.

D. *Discussion*

1. *a pure legal question*

Wiand's question fits the type of abstract legal issue § 1292(b) is designed to address, namely, a matter that the court of appeals could decide "quickly" and "cleanly" without having to delve into the facts. *McFarlin*, 381 F.3d at 1258. The September 29 order provides the necessary background to give an appreciation of the issue, and the answer to the question does not depend on any particular factual inquiry. Lastly, the question, or more appropriately its answer, has general relevance for these types of "clawback" actions, which, unfortunately, are too commonplace. My review of the Defendants' papers shows the Defendants do not really take issue with these conclusions.[11]

---

[10] The First Circuit puts the chances for such review more graphically – "hen's teeth rare." *Camacho v. Puerto Rico Ports Auth.*, 369 F.3d 570, 573 (1st Cir. 2004).

[11] I read the Defendants' arguments on this score as ones more pointed to § 1292(b)'s second and third demands.

### *2. substantial ground for differences of opinion*

Wiand contends he has not discovered a case that speaks to the "inherent conflict between Sections 754 and 1692 on the one hand and arbitration on the other." *See* doc. 50 at p. 6. Thus, he says, the question presented is one of first impression. His argument's premises, of course, are not only that arbitration inherently conflicts with his receivership role, but also that fair-minded jurists might agree with him. The Defendants counter that the Court's reasoning in its September 29 order forecloses these arguments.[12]

As this Court has previously noted, § 754 gives a receiver complete jurisdiction over property located within the jurisdiction of his appointment. And a receiver can obtain jurisdiction of the receivership estate property (real or personal) located outside the receivership court's district by filing a copy of the complaint and the order of appointment in the district court where the property is located within 10 days of his appointment. That section, when it applies, triggers § 1692, which effectively expands the territorial jurisdiction of the court which appoints the receiver to any district in the United States where property believed to be that of the receivership estate is found, provided the receiver files in each district the documents § 754 requires. 28 U.S.C. §§ 754, 1692; *see generally,* PHILLIP S. STENGER, THE RECEIVERSHIP SOURCEBOOK (4TH ED. 2009) at pp. 12-13. This scheme, however, does not evince a Congressional intent against arbitration. As the Defendants argued in their motions seeking to compel arbitration, Wiand, per 28 U.S.C. § 959(b), is bound to manage the Hedge Funds in the same manner as their owner would be.

As the Court indicated in its September 29 order, *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226-27 (1987) guides the analysis for determining whether Sections 754

---

[12] That order adopted my report and recommendation (doc. 41).

and 1692 predominate over the FAA. *McMahon* sets out three factors for deducing Congressional intent: (1) the text of the statute; (2) its legislative history; and (3) whether "an inherent conflict between arbitration and the statute's underlying purposes" exists. *Id.* at 227. Wiand, as the opposing party to arbitration, bears the burden of showing Congress intended to preclude arbitration of the statutory claim. *Id.*; *Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1273 (11th Cir. 2002) (applying test). And, as the Eleventh Circuit remarked in *Davis*, this burden is daunting: "[i]n every statutory right case that the Supreme Court has considered, it has upheld binding arbitration if the statute creating the right did not *explicitly* preclude arbitration." 305 F.3d at 1273 (emphasis in original).

*a. the bankruptcy model*

Wiand, drawing a comparison to the bankruptcy arena, cites a Fourth Circuit decision finding Congressional intent sufficiently clear so as to permit a bankruptcy court to override international arbitration agreements. *White Mountain Mining Co., L.L.C. v. Congelton, L.L.C.*, 403 F.3d 164, 170 (4th Cir. 2005). *White* noted that the "very purpose of bankruptcy is to modify the rights of debtors and creditors," and Congress intended to centralize disputes about a debtor's assets and legal obligations in bankruptcy courts. *Id.* at 169. Using a *McMahon* analysis, *White* determined that arbitration was inconsistent with centralized decision-making because permitting an arbitrator to decide a core issue (*see* 28 U.S.C. § 157(b)(2) which lists core proceedings) would make debtor-creditor rights contingent upon an arbitrator's ruling rather than the bankruptcy judge presiding over the debtor's case. *White*, at 169. I do not find Wiand's analogy persuasive.

While a receivership occasioned by an enforcement action evokes comparisons to bankruptcy, any likeness is conceptual. A receiver, like Wiand, is a creature of equity, *see Gulf Ref. Co. of La. v. Vincent Oil Co.,* 185 F. 87 (5th Cir. 1911); his powers, while extraordinary, are limited

8

by the district judge's concept of equity. RECEIVERSHIP SOURCEBOOK, *supra*, at p. 7. A trustee in bankruptcy functions under a code-driven scheme whose purpose is to modify the rights of debtors and creditors. *White*, 403 F.3d at 169-70.[13] That is not Wiand's mission under the order appointing him.

A more accurate comparison than Wiand's suggestion, and the one applied by the Court in granting the Defendants' motions to compel, is the broker-investor model that served as the backdrops in *McMahon, supra,* and *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989). The investors in those cases had arbitration agreements with their brokers that likely approximated the ones the Defendants had with their respective Hedge Fund, as such provisions are commonplace in the industry. All sued their brokers under the very schemes the Securities and Exchange Commission used when it asked the district judge to appoint Wiand. Despite the nature of their actions, the Supreme Court found the arbitral forum suitable for vindicating their claims. *McMahon* is particularly illustrative. There the investors also claimed the brokers had violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *See* 18 U.S.C. § 1961 *et seq.* In the face of the brokers' arbitration attempt, they argued RICO's civil and criminal overlap rendered their civil claims nonarbitrable; their RICO claims were too complex for an arbitrator to decide; and the public interest precluded arbitration of such a case. The Court rejected all this as nothing in the text of the RICO statute arguably evinced a congressional intent

---

[13] In *White*, the principal of a corporate Chapter 11 debtor brought an adversary proceeding against a debtor and investor seeking a determination as to whether certain pre-petition cash advances were debt or equity. The investor moved to compel arbitration in London. The Fourth Circuit affirmed the bankruptcy judge's denial of the motion to compel as both the adversary proceeding and the London arbitration involved core issues as to whether the cash advances debt or equity. *Id.*; *see* 28 U.S.C. § 157(b)(2) (outlining core proceedings).

to exclude civil RICO claims from the dictates of the FAA. *McMahon*, 482 U.S. at 238-40. That RICO failed to trump the FAA is significant here. RICO, on its criminal side, permits the government to seek forfeiture of any interest in property or assets acquired as a consequence of the prohibited activity. *See* 18 U.S.C. § 1963. And all right and title to that property vests in the United States upon the commission of the act giving rise to forfeiture (this is known as the relation-back doctrine). *See* 18 U.S.C. 1963(c); *United States v. Browne,* 505 F.3d 1229, 1281 (11th Cir. 2007). Wiand's civil prosecution of the "clawback" defendants draws parallels to RICO's forfeiture scheme. The Hedge Funds arguably constitute an enterprise engaged in a pattern of racketeering activity. *See* 18 U.S.C. § 1962(c). Wiand's actions under Florida's Uniform Fraudulent Transfer Act ("FUFTA," *see* Fla. Stat. § 726.101, *et seq.*) and for unjust enrichment approximate RICO's effort to recapture tainted assets.

### b. too costly

Wiand, like he did in opposing arbitration, asserts the costs associated with arbitration make it inconsistent with the purposes of his mandate to conserve receivership assets.[14] His argument does not present a close call as the case law on this issue is plainly settled. *McFarlin*, 381 F.3d at 1258. Wiand must show the arbitral costs are likely "prohibitively expensive." *Green Tree Financial*, *supra,* 531 U.S. at 92. And "prohibitively expensive" has a distinct meaning – Wiand would have to show that enforcement of the agreement would "preclude" him from "effectively vindicating his federal statutory right in the arbitral forum." *Musnick v. King Motor Co. of Ft. Lauderdale*, 325 F.3d

---

[14] Wiand argues that requiring him to pursue his prosecutions in an arbitral forum will not advance the ultimate termination of the litigation, which is § 1292(b)'s last requirement. *See* doc. 50 at pp. 8-10. What he is really saying, however, is that reasonable jurists could disagree about whether the costs of arbitration are inconsistent with his role as receiver for the receivership estate. For the reasons I have given, I do not find substantial differences of opinion exist on the issue.

1255, 1259 (11th Cir. 2003), quoting *Green Tree Financial*, 531 U.S. at 90. Absent such a showing, the agreement may be enforced. *Id.* at 1259. Wiand simply fails to make the required showing, particularly since the congressional premise for enacting the FAA is that arbitration is a cost-effective, efficient alternative to the courts for resolving disputes.[15]

       3. *materially advance the litigation's termination*

The answer to Wiand's question must either substantially shorten litigation in these cases or avoid their litigation altogether. *McFarlin*, 381 F.3d at 1259. Wiand says he "easily" satisfies this prong. I disagree. Nothing he presents speaks to streamlining or even eliminating the FUFTA and unjust enrichment claims he brings against these Defendants. Instead, his question is about *where* to litigate these claims and not *what* to litigate.

E. Conclusion

In 1988, Congress amended the FAA by adding § 16, thereby signifying a national effort to

---

[15] As this Court earlier noted in its September 29 order, both JAMS and the AAA include provisions allowing arbitrators to impose fee-sharing obligations on the parties as part of the award. Despite this, Wiand now offers another scenario for additional litigation costs: if the Court were to deny certification, thereby "forcing" him to arbitrate during the pendency of his Eleventh Circuit appeal, the receivership estate could conceivably be sapped additional costs. He conjectures that if he were to prevail on appeal, that decision would make the arbitrations "unnecessary" and these disputes would be returned to this Court for "re-prosecution." *See* doc. 50 at p. 10. Frankly, I find these arguments difficult to follow. If Wiand is successful in an arbitration, he pours those proceeds into the receivership estate and ultimate distribution per the Court's directive. Nothing would be left to prosecute other than enforcing the arbitrator's award. Wiand's decision to pursue an appeal of the September 29 order based on the filing of his notice of appeal is his choice to make considering the oversight by the district judge who appointed him. Should he decide to continue that appeal when confronted with the Court's refusal to certify his question is again his decision to make. No doubt, like most such decisions, he will balance economics against the likelihood of success. His decision to appeal and the costs associated with it, however, have no relevancy to the question of whether a receivership scheme is antithetical to arbitration. Nor is that strategy relevant for determining the merits of his § 1292(b) request.

prevent the appellate process from impeding a litigant's expeditious route to arbitration.[16] Its design was "to assure that if the district court does determine that arbitration is called for, the court system's interference with the arbitral process will terminate then and there, leaving arbitration to go forward." Siegel, *supra*. Wiand's request for an appeal, which will increase the litigation costs and delay the final determinations to the substantive dispute, butts against this settled policy. And against this pro-arbitration standard, his motion fails to meet § 1292(b)'s high threshold for certifying the appeal of a pro-arbitration ruling. *OFS Fitel, LLC*, 549 F.3d at 1358-1359.[17] For these reasons and those stated in the Court's September 29 order, I recommend the district judge deny Wiand's motion for certification for interlocutory appeal in the cases listed in Appendix A to this report.

IT IS SO REPORTED in Tampa, Florida, on January 4, 2012.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

---

[16] As originally enacted in 1988, the provision bore § 15; Congress renumbered the provision to § 16 in 1990. *See generally* WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D § 3914.17. See also 9 U.S.C.A. § 16, Siegel, David D., *Practice Commentary*.

[17] Wiand notes in his motion that the district judge overseeing his receivership permitted him to appeal (doc. 50 at p.1). Wiand does not suggest, other than perhaps by oblique inference at its mentioning, that this approval amounts to that judge's recognition of the merits of Wiand's arguments made here. The district judge overseeing Wiand did not have the benefit of his motion for certification or the Defendants' persuasive responses against it.

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).

cc: The Honorable Elizabeth A. Kovachevich
    Counsel of Record

Appendix A

| CASE NUMBER | DEFENDANT(S) | MOTION |
|---|---|---|
| 8:10-CV-71-T-17MAP | Peter Roby; Katherine Roby | Doc. 50 |
| 8:10-CV-96-T-17MAP | Charles A. Hailey | Doc. 53 |
| 8:10-CV-97-T-17MAP | Gregg Weinberg, as Trustee of the Commonwealth Radiology, PC Profit-Sharing Plan | Doc. 51 |
| 8:10-CV-112-T-17MAP | Louis Wang | Doc. 31 |
| 8:10-CV-119-T-17MAP | John D. Whitlock | Doc. 53 |
| 8:10-CV-123-T-17MAP | Rodney Nigel Turner | Doc. 52 |
| 8:10-CV-125-T-17MAP | W.W. Whitlock Foundation | Doc. 53 |
| 8:10-CV-130-T-17MAP | Ellen Schwab | Doc. 56 |
| 8:10-CV-134-T-17MAP | Paul Swenson | Doc. 54 |
| 8:10-CV-157-T-17MAP | Edward Steinhauser; Diane Schwab | Doc. 53 |
| 8:10-CV-161-T-17MAP | Daniel A. Zak, individually and as Trustee of the EPMG - NW P.C. MPP & PS Trust | Doc. 53 |
| 8:10-CV-170-T-17MAP | Marian Zak, as Trustee of the Marvin Zak and Marian Lyle Zak Bypass Trust U/A dtd 10/16/1998 | Doc. 48 |
| 8:10-CV-171-T-17MAP | Harvey A. Gilbert, as Co-Trustee of the Gilbert Family Trust; Deanne E. Gilbert, as Co-Trustee of the Gilbert Family Trust | Doc. 52 |
| 8:10-CV-176-T-17MAP | Richard E. Russell, individually and as Trustee of the Richard E. Russell Revocable Living Trust | Doc. 50 |
| 8:10-CV-180-T-17MAP | John D. Whitlock, as Trustee of the W.W. Whitlock PC Pension Trust | Doc. 52 |
| 8:10-CV-181-T-17MAP | Roberta Schneiderman, as Co-Executor of the Estate of Herbert Schneiderman; Robert D. Zimelis, as Co-Executor of the Estate of Herbert Schneiderman | Doc. 48 |

| | | |
|---|---|---|
| 8:10-CV-184-T-17MAP | John Whitlock, as Co-Trustee of the Edward J. Whitlock, Jr. Marital Trust Two; Thomas Luck, as Co-Trustee of the Edward J. Whitlock, Jr. Marital Trust Two | Doc. 55 |
| 8:10-CV-185-T-17MAP | Walter L. Schwab, as Trustee of the Walter L. Schwab Revocable Trust dtd 10/23/1991 | Doc. 53 |
| 8:10-CV-203-T-17MAP | World Opportunity Fund, L.P. | Doc. 50 |
| 8:10-CV-206-T-17MAP | Melinda Munson; Mark Munson | Doc. 48 |
| 8:10-CV-212-T-17MAP | The Carrswold Partnership | Doc. 52 |
| 8:10-CV-218-T-17MAP | Kathryn Lawrence | Doc. 46 |
| 8:10-CV-221-T-17MAP | Munson Family Partners, Ltd. | Doc. 48 |
| 8:10-CV-223-T-17MAP | Dominique Schmidt; Caroline Schwab | Doc. 52 |